## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, A.D. Aldridge being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.          I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to search Erica RATLIFF's (RATLIFF) primary residence located at 370 Fairview Drive, Charleston, West Virginia 25302. This residence is utilized by RATLIFF to distribute controlled substances.

2.          I have been a Task Force Officer with DEA since July 2020.  I have received DEA Basic Narcotics Officer Training at the Kanawha County Sheriff's Office Training Center located in Charleston, West Virginia.  I am currently assigned to DEA Charleston Office.  Prior to my current assignment, I was assigned to the Metro Drug Enforcement Network Team in Charleston, West Virginia for approximately 3 years.  Prior to this assignment I was assigned to the Charleston Police Department's Patrol Division, as a Patrol Officer.  As a Patrol Officer with the Charleston Police Department, I had the opportunity to respond to and investigate many crimes including narcotics related crimes.  As a Detective assigned to the Metro Drug Unit, I began to specialize in narcotics related investigations.  I have participated in approximately 300 separate narcotics investigations led by myself and assisted others.   I have participated in multiple large-scale Drug Trafficking Organization (DTO) investigations involving multiple jurisdictions and states.  I have had the opportunity to assist other Federal Agencies in cases involving Title III communication interceptions.   I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, and laundering proceeds, among other subjects related to drug trafficking. I have been to a plethora of narcotics related trainings

including the HSI/DHS TFO course.  Agents and Detectives that I work with on a day-to-day
basis have had similar, and more experiences with large scale investigations.

3.     I have obtained the facts set forth in this Affidavit through my personal
participation in the investigation, from oral and written reports of other law enforcement officers,
from records, documents and other evidence obtained during this investigation, and from other
sources of information as referenced herein. This affidavit is intended to show merely that there
is sufficient probable cause for the requested warrant and does not set forth all my knowledge
about this matter.

## PROBABLE CAUSE

4.     The United States, including the Drug Enforcement Administration, is
conducting a criminal investigation of Jermaine WILLIAMS (WILLIAMS) and others regarding
possible violations of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 9234(c). The investigation thus
far has determined WILLIAMS is an upper level member of the Maylik WATSON Drug
Trafficking Organization (Maylik WATSON DTO).

5.     Investigators ran a criminal history report on RATLIFF, which provided the
following information.

|   |   |   |   |
|---|---|---|---|
| a. | 03/13/2009 | Possession of Controlled Substance | Dismissed |
| b. | 10/29/2017 | Forgery | Convicted |
| c. | 04/25/2019 | Identity Theft | Convicted |

6.     Throughout the last half of 2020, investigators have investigated the Maylik
WATSON DTO.  Investigators have conducted controlled purchases on Maylik WATSON
(WATSON), WILLIAMS, and other members of the DTO, of large quantities of
methamphetamine using confidential informants.  Officers have also executed search warrants on

2

various members of the DTO, which resulted in the seizures of large quantities of methamphetamine, U.S. currency, and firearms. Investigators have determined RATLIFF to be a mid-level re-distributor for this DTO.

7.      On November 24, 2020, officers with the Charleston Police Department conducted a traffic stop on RATLIFF in Charleston, West Virginia. A search of her vehicle revealed a large quantity of suspected methamphetamine and other various narcotics. The suspected methamphetamine in total weighed approximately 106 grams and provided a positive field test result for the presence of methamphetamine.

8.      On December 5, 2020, RATLIFF was again stopped by officers with the Charleston Police Department. A search of her vehicle revealed that RATLIFF was in possession of approximately 18.69 grams of suspected methamphetamine.

9.      On January 8, 2021, I was contacted by Detective Castleman with the Charleston Police Department's Criminal Investigations Division. Castleman advised that he had observed an immense amount of traffic coming from the residence of 370 Fairview Drive Charleston, West Virginia. Castleman stated that he believed this traffic to be a result of Erica RATLIFF and her involvement of the distribution of illegal narcotics.

10.      On January 25, 2021, investigators conducted a trash pull investigation at RATLIFF's residence. Investigators are familiar with this area of Charleston, West Virginia, and know that trash is placed out for collection on Monday evenings and collected on Tuesday mornings. Investigators observed most of the residence with trash placed out for collection. At RATLIFF's residence of 370 Fairview Drive, Charleston, West Virginia, investigators observed trash across the street on the side of the road from this residence. Investigators collected three

bags of trash from this location and transported it back to the DEA Charleston District Office for processing.

11.     A search of the trash revealed several baggies with missing corners, several corner portions of baggies, what is believed to be a "drug ledger," mail addressed to RATLIFF's residence, a bill with RATLIFF's name on it, and vehicle information on the same vehicle that RATLIFF was stopped in on both occasions. Based on my training and experience, I know that drug distributors will use the corners of plastic baggies to package their drugs for distribution and then throw out the remainder of the bag. I also know that distributors of narcotics will often keep a "drug ledger" indicating who stills owes for controlled substances fronted to them or how much a certain customer bought. The suspected drug ledger recovered from RATLIFF's trash contained a list of names with amounts listed beside them. For example: Colin 350.00 and 230.00 total 580.00. Based on my training and experience, I know this to be common on a drug ledger reflecting what I believe to be two distributions to an individual by the name of Colin totaling $580.00. Investigators believe that this trash investigation was consistent with that of a residence that is involved in the illegal distribution of controlled substances.

12.     Based on my training and experience, I know that it is not uncommon for drug traffickers to store their controlled substances and/or their drug proceeds in their residence. Based on the above, I believe there is probable cause to search 370 Fairview Drive, Charleston, West Virginia 25302 for evidence of drug trafficking.

Respectfully submitted,

A.D. Aldridge
Task Force Officer
Drug Enforcement Administration


Subscribed and sworn to me by reliable electronic means on February 8th, 2021.

DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

5

Attachment A

ATTACHMENT B

1.      Controlled substances, including, but not necessarily limited to methamphetamine.

2.      Financial and business records, including, but not limited to, books, records, ledgers, journals, receipts, notes, memoranda, address books, and telephone books.

3.      Titles, books, records, receipts, bank statements and records, money drafts, letter of credit, money order and cashier's checks, receipts, passbooks, bank deposit tickets, safe deposit box keys, and memoranda and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment, and/or expenditure of money.

4.      United States currency, precious metals, jewelry, safes, and financial instruments, including, but not limited to, stocks and bonds.

5.      Drug ledgers and/or records relating to drug trafficking and drug debts.

6.      Paraphernalia for packaging, weighing, and distribution of controlled substances, including, but not limited to, scales, storage containers, and plastic bags.

7.      Firearms and security devices.

8.      Photographs which could include identifying information regarding individuals involved in the sale of controlled substances and the subject money laundering.